UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) Case No.: 1:15-cv-00506-JAM-BAM |
| Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS** |
| v. | ) **GRANTING PLAINTIFF'S MOTION FOR** |
| | ) **DEFAULT JUDGMENT** |
| ROGELIO ORTEGA, individually and d/b/a | ) |
| TACO GUEY; and ORG DIAMOND, INC., | ) (Doc. 17) |
| an unknown business entity d/b/a TACO | ) |
| GUEY, | ) |
| Defendants. | ) FOURTEEN-DAY DEADLINE |
| | ) |

## INTRODUCTION

On November 10, 2015, J & J Sports Production, Inc. ("Plaintiff") filed the instant motion for default judgment against Defendants Rogelio Ortega, individually and doing business as Taco Guey, and Org Diamond, Inc., an unknown business entity doing business as Taco Guey ("Defendants"). (Doc. 17.)  Defendants have not responded to the motion or otherwise appeared in this lawsuit.  The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for December 18, 2015.  Having considered the moving papers, the briefing, and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and judgment be entered in the amount of $5,400 against Defendants.

## FACTUAL BACKGROUND

On April 1, 2015, Plaintiff filed its complaint against Defendants, alleging violations of 47 U.S.C. § 605, *et seq.*, and 47 U.S.C. § 553, *et seq.*, as well as claims under California state law.  As alleged in the Complaint, Plaintiff was granted the exclusive nationwide commercial distribution

(closed-circuit) rights to *Manny Pacquiao v. Timothy Bradley, II Welterweight Championship Fight Program* (the "Program") telecast nationwide on Saturday, April 12, 2014.  Compl. ¶ 16.)  Plaintiff entered into sublicensing agreements granting public exhibition rights to various commercial entities throughout the United States, and within the State of California.  (Compl. ¶ 17.)  Plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to these commercial entities.  (Compl. ¶ 18.)

On Saturday, April 12, 2014, Jonathan Browne ("Browne") entered Taco Guey in Tulare California, at approximately 9:31 p.m.  *See* Affidavit of Jonathan Browne ("Browne Decl.") (Doc. 17-3 at 1.) Defendants did not charge a cover to enter the establishment.  While in Taco Guey, Browne noted one 40-42" flat screen television showing the Program. He estimated the establishment's capacity as 50 people, and counted 4 patrons at three separate times before leaving.  (Browne Decl. at 1.)

Plaintiff alleges that Defendants knowingly and unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program at the time of its transmission at the commercial establishment, Taco Guey, owned and operated by Defendants.  (Compl. ¶ 19.)  Plaintiff further alleges Defendants did so willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain, in violation of 47 U.S.C. § 605, et seq.  (Compl. ¶¶ 20-21.)  Plaintiff seeks statutory damages for each violation in the amount of $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), statutory damages for each willful violation in the amount of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), and attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).  (Compl. ¶ 24.)

On September 11, 2015, after Defendants failed to file an answer, Plaintiff requested entry of default against Defendants, which was entered by the Clerk of the Court on that same day.  (Docs. 13, 14, 15.) On November 10, 2015, Plaintiff filed the present motion for default judgment.  (Doc. 17.) Plaintiff's motion requests that the Court enter default judgment against Defendants for damages in the amount of $112,200.00.  Defendants have not appeared or otherwise defended this action.

///

///

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (*citing Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. *Id.* at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (*citing Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); *accord Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).   In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (*citing Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. *Geddes*, 559 F.2d at 560.

///

3

**DISCUSSION**

**1.    Adequacy of Service of Process**

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of Plaintiff's Motion for Default Judgment. *See BR North 223, LLC v. Glieberman*, No. 1:10-cv-02153 LJO-BAM, 2012 WL 639500, at *3 (E.D. Cal. Feb. 27, 2012).   According to Plaintiff's allegations, Defendant Rogelio Ortega is an officer of Org Diamond, Inc, which owns and operates the commercial establishment doing business as Taco Guey operating at 250 E. Cross Avenue, Tulare, California 93274.  (Compl. ¶ 7.)  Defendant Rogelio Ortega is the individual specifically identified on the California Alcoholic Beverage and Control license issued for Taco Guey (ABC #536003). (Compl. ¶ 8.)

Under Federal Rule of Civil Procedure 4(e), an individual, such as Defendant Rogelio Ortega, may be served by:

    (1)    following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

    (2)    doing any of the following:

        (A)    delivering a copy of the summons and of the complaint to the individual personally; or

        (B)     leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

        (C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Plaintiff contends that service of the summons and complaint in this action was made on Defendant Rogelio Ortega by personal service pursuant to federal law on August 19, 2015.  Plaintiff's proof of service indicates that process server Robert Hall served Rogelio Ortega at 643 South Olive Street, #421, Los Angeles, California 90014, at 3:02 p.m.  A true and correct copy of the Proof of Service was filed with this Court on August 22, 2015.  (Doc. 11.)  Based on the Proof of Service,

Plaintiff effectuated service on Defendant Rogelio Ortega pursuant to Federal Rule of Civil Procedure 4(e)(2)(A).

Under Federal Rule of Civil Procedure 4(h), a corporation, such as Org Diamond, Inc., may be served:

> (1)    in a judicial district of the United States:
>
>> (A)    in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>
>> (B)    by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h).

Plaintiff contends that service of the summons and complaint in this action was made on Defendant Org Diamond, Inc. by personal service on Rogelio Ortega, an officer of the entity and agent for service of process, pursuant to federal law on August 19, 2015.  Plaintiff's proof of service indicates that process server Robert Hall served Rogelio Ortega, as agent for service of process for Org Diamond, Inc. at 643 South Olive Street, #421, Los Angeles California 90014 at 3:02 p.m.  A true and correct copy of the Proof of Service was filed with this Court on August 22, 2015.  (Doc. 12.) Based on the proof of service, Plaintiff effectuated service on Defendant Org Diamond, Inc. pursuant to Federal Rule of Civil Procedure 4(h)(1)(B).

Defendants are not infants, incompetent persons, or persons in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940. (Riley Decl., Doc. 13-1, ¶ 5.)  Accordingly, the Court finds that Plaintiff properly served the summons and complaint in this matter.

**2.    The *Eitel* Factors Favor Entry of Default Judgment**

The Court finds the *Eitel* factors weigh in favor of granting Plaintiff's application for default judgment.  With regard to the first *Eitel* factor, if Plaintiff's application for default judgment were to be denied, it would leave Plaintiff without a remedy and Plaintiff would be prejudiced.  This factor

therefore weighs in favor of default judgment. *See J & J Sports Prods, Inc. v. Concepcion*, No. C-10-CV-05092 WHA, 2011 WL 2220101 at *2 (N.D. Cal. June 7, 2011).

As to the second and third *Eitel* factors, Plaintiff's substantive claims appear meritorious and the complaint is sufficiently pled. Plaintiff has alleged that Defendants violated sections of Title 47 and set forth the activities supporting substantive violations. Plaintiff also set forth the applicable laws pursuant to which the court may provide relief. These factors weigh in favor of default judgment.

As to the fourth factor, the damages in this case cannot exceed the amounts specified in 47 U.S.C. § 605 and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000, and enhanced damages may not exceed $100,000. *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii). Plaintiff is seeking a total of $110,000 in statutory and enhanced damages, along with $2,200 in damages for conversion (or the amount Defendants would have been required to pay to order the Program). Although Plaintiff seeks the maximum statutory and enhanced damages available, the relatively small sum of money at stake, as explained more fully below, and the Court's discretion in awarding enhanced damages weigh in favor of granting default judgment.

As to the fifth factor, there is no dispute of material fact since Defendants failed to respond to either the Complaint or this motion. This factor weighs in favor of default judgment.

As to the sixth factor, it is unlikely that default was the result of excusable neglect. Defendants were properly served and have not appeared in this case. (*See* Docs. 11, 12.) This factor weighs in favor of default judgment.

Finally, the seventh factor supports a default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." *Concepcion*, 2011 WL 2220101, at *2. Therefore, this general policy is outweighed by the more specific considerations, and the motion to enter default judgment will be granted.

Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED.

///

///

6

3.      **Calculation of Damages**

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(a) and $100,000 in enhanced damages for willful violation pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).  (See Doc. 17-1 at 11-19.)   Plaintiff also seeks $2,200 in conversion damages, the minimum amount Defendants allegedly would have been required to pay Plaintiff for a commercial sublicense to publicly exhibit the Program.  (Doc. 17-1 at 20.)

A.      **Statutory Damages**

Plaintiff requests $10,000 in statutory damages as a result of the alleged violation of 47 U.S.C. § 605(a), which "prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." *J & J Sports Prods., Inc. v. Ro*, No. 09-CV-02860, 2010 WL 668065 at *3 (N.D. Cal. Feb. 19, 2010) (quoting *J & J Sports Prods., Inc. v. Guzman*, No. 08-CV-05469, 2009 WL 1034218 at *2 (N.D. Cal. Apr. 16, 2009)).  The statute provides statutory damages ranging from $1,000 to $10,000 for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff alleges that Defendants violated Section 605 because "[w]ith full knowledge that the *Program* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, . . . Defendants . . . did unlawfully intercept, received, publish, divulge, display, and/or exhibit the Program at the time of its transmission at their commercial establishment...." (Compl. ¶ 19) (italics in original).  However, Plaintiff fails to identify the means of signal transmission, which is necessary to determine whether Plaintiff should be awarded maximum statutory damages pursuant to Section 605.  *See J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030-EJD, 2014 WL 121711, at *3 (N.D. Cal. Jan. 13, 2014).  Indeed, Plaintiff admits that it "cannot determine the precise means that the Defendant used to receive the *Program* unlawfully." (Doc. 17-1 at 8) (italics in original).  Further, the declaration of Plaintiff's affiant, Jonathan Browne, does not state whether the establishment had a satellite dish or a cable box.  (See Browne Decl. at 1.)  Despite these facts, Plaintiff contends the court has discretion to award significant damages "[e]ven in . . . cases of commercial signal piracy where there has been no egregious circumstances noted[.]"  (Doc. 17-1 at 12.)

Here, it is undisputed that Defendants did not charge a cover for patrons to enter Taco Guey to watch the Program, and there is no evidence that Defendants increased prices or required food and drink purchases.   Additionally, there were very few patrons in the bar and only one television broadcasting the Program.   (*See* Browne Decl. at 1.)   Plaintiff also presents no evidence Defendants are repeat offenders.   Given these facts, the Court in its discretion finds the minimum statutory damage amount to be appropriate.   *See, e.g., J & J Sports Prods., Inc. v. Pinon*, No. 5:13-cv-05559-BLF, 2014 WL 3593629, at *3 (N.D. Cal. Jul. 18, 2014) (awarding statutory minimum where defendant was first-time offender, displayed the program on one television, did not charge a cover fee and there were at most eleven people in the establishment); *J & J Sports Prods., Inc. v. Salgadobarajas*, No. 5:13-cv-05557-BLF, 2014 WL 3053485, at *3 (N.D. Cal. Jul. 3, 2014) (awarding statutory minimum where defendant was first-time offender, displayed the program on one television in a room that accommodated one-hundred people, did not charge a cover and there were at most sixty-nine people in the establishment); *Deleon*, 2014 WL 121711, at *3  (finding minimum statutory amount appropriate where no cover charge, increased prices, or required food purchase, very few patrons and three televisions and projector broadcasting program).

Accordingly, the Court RECOMMENDS that Plaintiff be awarded the minimum statutory damages allowed, $1,000.

**B.      Enhanced Damages**

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii).   (Doc. 17-1 at 14-19.)   This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts.   These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant."  *Concepcion*, 2011 WL 2220101, at *4.  Enhanced damages have also been awarded when the defendant has violated Section 605 on previous occasions.

1  *See J & J Sports Prods., Inc. v. Paniagua*, No. 10-CV-05141-LHK, 2011 WL 996257, at *2 (N.D. Cal.

2  Mar. 21, 2011).

3      The Court does not find an award of maximum damages under Section 605 appropriate.  There

4  is no evidence of significant "commercial advantage or private financial gain" in this instance.

5  Plaintiff has presented evidence that Defendants had only one television set in the commercial

6  establishment that displayed the Program, and the affiant asserts that there were only four patrons

7  present during the entirety of the investigation.  (See Browne Decl. at 1.)  Further, as already

8  discussed, there is no evidence that Defendants assessed a cover charge, required a minimum purchase

9  from patrons, or had a special premium on food and drinks on the night of the fight.  *See Kingvision*

10 *Pay-PerView, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 n.2 (N.D. Cal. 2000) (stating that "[a]n

11 establishment that does not promote itself by advertising the Program, does not assess a cover charge,

12 and does not charge a special premium for food and drinks hardly seems like the willful perpetrators

13 envisioned by the statute's framers.").  Plaintiff has also failed to present evidence that Defendants

14 have violated Section 605 on prior occasions.

15      In light of the above mentioned facts, the Court does not agree that the maximum enhanced

16 damages award is warranted.  Although Plaintiff cites primarily to several out-of-district cases to

17 support its request for maximum enhanced damages (*see* Doc. 17-1 at 14-18), Plaintiff has not cited

18 any binding precedent or identified any specific circumstances that justify such a high award here.

19 Accordingly, the Court concludes that an award of $2,200—the value of the commercial license to air

20 the program—is more than adequate and just to compensate Plaintiff for lost profits and to deter

21 Defendants' future infringement.  *See, e.g.*, *Joe Hand Promotion, Inc. v. Munoz*, No. 5:13-CV-05926-

22 EJD, 2014 WL 4100724, at *3 (N.D. Cal. Aug. 20, 2014) (awarding enhanced damages equal to the

23 value of the commercial license where defendant did not charge a cover, there was no evidence of

24 increased prices or required purchases, two televisions displayed the event and 50 patrons were

25 present); *Deleon*, 2014 WL 121711, at *4 (awarding enhanced damages equal to the value of the

26 commercial license where no evidence of cover charge, minimum purchase or special premium,

27 program displayed on three televisions and one projector, and between 9 to 23 patrons present).

28      Therefore, the Court RECOMMENDS that Plaintiff be awarded $2,200 in enhanced damages.

9

C.      **Damages for Conversion**

Plaintiff also seeks $2,200 in damages for conversion under California Civil Code § 3336. (Doc. 17-1 at 20.)   Damages for conversion are based on the value of the property at the time of conversion.   *See Tyrone Pac. Intern., Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981). Here, Plaintiff has shown that it owns the right to distribute the Program at issue and has properly alleged the misappropriation of the right to distribute the Program.   As to damages, the "value of the property" was the commercial sublicense fee amount Defendants would have been required to pay, or $2,200. (Affidavit of Plaintiff, Doc. 17-4, ¶ 8 and Ex. 2.)

Accordingly, the Court RECOMMENDS that Plaintiff be awarded $2,200 in damages for conversion.

**CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's application for default judgment (Doc. 17) be GRANTED and judgment be entered in favor of Plaintiff and against Defendants in the amount of $5,400 in total damages.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.   Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.   *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**December 16, 2015**__        ___/s/ Barbara A. McAuliffe___

UNITED STATES MAGISTRATE JUDGE

10